UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CV-234-BR

| | | |
|---|---|---|
| AMIE LOY RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COLUMBUS REGIONAL | ) | |
| HEALTHCARE SYSTEM, INC. | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the 7 October 2011 motion for summary judgment filed by defendant Columbus Regional Healthcare System, Inc. ("Columbus"). The period to respond and reply to the motion has elapsed, and the matter is now ripe for disposition.

## I. BACKGROUND

The undisputed facts in this case are as follows: Plaintiff Amie Loy Ryan ("plaintiff") was hired by Columbus in 2005 as a registered nurse in Columbus's Operating Room Department. (Pl.'s Dep., Def. Ex. 3,[1] DE # 20-3.) Plaintiff was not specifically hired to be a "circulating nurse" in the operating room, but this became her primary responsibility. (Pl.'s Dep., DE # 20-2, at 47-49.) The circulating nurse was, in plaintiff's words, the "overseer of the room." (Id. at 49.) For example, "[i]f the doctors need anything" or "if there's equipment that needs to be brought in that's not there," it was the circulating nurse's responsibility to retrieve it. (Id.) Plaintiff was also frequently called upon to turn or shift a patient, which would often

---

[1] The exhibits introduced during plaintiff's deposition were inadvertently not consecutively numbered. For clarity, citations to "Def. Ex. ___" are to exhibits from plaintiff's deposition, which are labeled with "Defendant's Exhibit" stickers.

require lifting more than 100 pounds. (Id. at 60.) Some of these duties are memorialized in a "Physical Demands Analysis" required of Operating Room nurses, a version of which was presented to plaintiff during the hiring and orientation process. (Id. at 55-63 & Def. Ex. 1, DE # 20-3.) The "Physical Demands Analysis" indicates that plaintiff was required to stand and walk constantly as part of her job. (Pl.'s Dep., Def. Ex. 1, DE # 20-3, at CRHS 000007.)

Plaintiff suffered from degenerative joint disease and arthritis in her knee. (Pl.'s Dep., DE # 20-2, at 123; A. Schuett Dep., DE # 20-5, at 28-29.) On 10 November 2008, plaintiff had knee replacement surgery. (A. Schuett Dep., DE # 20-5, at 62 & Ex. 6.) In December 2008, plaintiff was placed on the schedule to return to work in January 2009, provided that she was cleared by her physician beforehand. (Pl.'s Dep., DE # 20-3, at 193-94; C. Fipps Decl., DE # 20-7, ¶ 11.) However, plaintiff's leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, expired on 9 January 2009 without her being cleared to return to work. (Pl.'s Dep., Def. Ex. 11, DE # 20-4, at CRHS 000030; C. Fipps Decl., DE # 20-7, ¶ 12.)

Because plaintiff failed to return to work during her FMLA-protected leave, Tracie Allen ("Allen"), the Benefits Coordinator in Columbus's Human Resources Department, sent plaintiff a letter dated 20 January 2009 explaining that plaintiff had been transferred to a regular, *i.e.*, non-FMLA protected, twelve-month medical leave of absence as of 10 January 2009. (T. Allen Aff., DE # 20-8, ¶ 7 & Ex. B.) Plaintiff denies having received the 20 January 2009 letter (Pl's. Aff., DE # 22-1, ¶¶ 10, 12), but she admits that she knew she would receive twelve additional months of medical leave when her FMLA leave expired. (Pl.'s Dep., DE # 20-3, at 211.)

On or about 21 January 2009, plaintiff submitted a letter to Columbus's Human Resources Department requesting a reasonable accommodation under the Americans with

2

Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (Pl.'s Dep., Def. Ex. 14, DE # 20-4.) She asked that certain "adjustments" be made "to the physical demands of [her] position as a staff nurse" to allow her to return to work. (Id.) In particular, plaintiff referred to the requirements listed in the "Physical Demands Analysis" that she received when she was hired. She requested "that the requirement to stand be changed from constantly to frequently" and "that the requirement to stoop, kneel, crouch, or crawl be changed from frequently to occasionally." (Id.) Plaintiff also noted that "the healing process after a total knee replacement can take from 6 months up to one year for each individual to reach 100 percent potential." (Id.; see also Pl.'s Dep., DE # 20-3, at 215-18.)

In relation to her request for accommodation, plaintiff also submitted a "Notice of Intent to Return to Work." (Pl.'s Initial Disclosures, Ex. E, DE # 20-6.) She completed her portion of the notice and had her physician, Dr. Andrew Schuett, complete the balance. (Id.) Effective 28 January 2009, Dr. Schuett cleared plaintiff for "[l]imited duty" only, and he recommended certain restrictions. (Id.) For example, plaintiff was not permitted, until further notice, to walk or to stand for longer than two hours without rest. (Id.) She was also prohibited from squatting, running, or crawling. (Id.; see also Pl.'s Dep., DE # 20-3, at 222-24.)

Because of the seriousness of some of the restrictions listed by Dr. Schuett, plaintiff was informed on 26 January 2009 that Miranda Kamberger ("Kamberger"), Columbus's Employee Health Nurse, would be seeking clarification from Dr. Schuett's office regarding the restrictions. (M. Kamberger Aff., DE # 20-9, ¶ 4 & Ex. A; Pl.'s Dep., DE # 20-3, at 221.) Kamberger learned that plaintiff could not walk or stand for longer than two hours without taking a break to sit down or elevate her legs for five to ten minutes. (M. Kamberger Aff., DE # 20-9, ¶ 4 & Ex.

3

A.)

On 27 January 2009, Kamberger contacted plaintiff again and told her not to report for work the following day. (Id. ¶ 4.) She also told plaintiff to await a call from Ms. Ginger Scott ("Scott"), Columbus's Vice President of Human Resources, who would provide more information. (Id.) On 28 January 2009, Scott called plaintiff and told her that Columbus could not accommodate her request to modify the requirements of the Operating Room nurse position due to the risk to patient safety posed by her restrictions. (G. Scott Aff., DE # 20-10, ¶ 8.) Plaintiff was told that her physical limitations would prevent her from being able to respond promptly and appropriately to patient care needs. (Id.)

After a few additional months of recovery and physical therapy, plaintiff applied for long-term disability benefits in April 2009. (Pl.'s Dep., DE # 20-3, at 233; Pl.'s Dep., Def. Ex. 16, DE # 20-4; T. Allen Aff., DE # 20-8, ¶ 8.) Plaintiff made the application with a third party, Unum Life Insurance Company ("Unum"), which provided long-term disability benefits to Columbus's employees. (Id.)

Sometime in late June 2009, Allen received a letter from Unum dated 18 June 2009. (T. Allen Aff., DE # 20-8, ¶ 9 & Ex. C.) The letter explained that Unum had approved plaintiff's request for long-term disability benefits, with her date of disability determined to be 4 November 2008 and with benefits to begin on 3 May 2009. (Id.) As described in the Employee Handbook and in Human Resources Policy # 4.1, Columbus had a policy of removing from its payroll any employee on a medical leave of absence who became qualified to receive long-term disability benefits. (T. Allen Aff., DE # 20-8, ¶ 10 & Ex. D; Pl.'s Dep., DE # 20-2, at 86-87; Pl.'s Dep., Def. Ex. 6 at 12, DE # 20-4.) In accordance with that policy, Allen sent plaintiff a letter dated 3

4

July 2009 explaining that she would be removed from Columbus's payroll effective 3 May 2009 because she had qualified for long-term disability benefits. (T. Allen Aff., DE # 20-8, ¶ 11 & Ex. E.) Plaintiff's long-term disability benefits were later terminated in August 2009 based on a finding that plaintiff was able to perform the duties of her occupation. (Pl.'s Initial Disclosures, Ex. G, DE # 20-6.)

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on 2 November 2009. (Pl.'s Dep., Def. Ex. 19, DE # 20-4.) Based on its investigation, the EEOC was unable to conclude that the information obtained established any statutory violation. (Id., Def. Ex. 20, DE # 20-4.)

Plaintiff subsequently filed this lawsuit on 17 November 2010. On 7 October 2011, Columbus filed a motion for summary judgment (DE # 19). Plaintiff filed a response on 15 November 2011 (DE # 22), and Columbus filed a reply on 29 November 2011 (DE # 23).

## II. DISCUSSION

A.  <u>Summary Judgment Standard</u>

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." <u>Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.</u>, 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

B.  Applicability of the ADA Amendments Act of 2008

Plaintiff brings her claims pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. In 2008, Congress made substantial changes to the ADA through the ADA Amendments Act of 2008 ("ADAAA"), which became effective on 1 January 2009. Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). The ADAAA was intended to clarify congressional intent with respect to the original ADA, as well as to overturn certain United States Supreme Court cases that had narrowed the ADA's scope. Id., § 2(b), 122 Stat. at 3554.

Here, plaintiff alleges that she was denied a reasonable accommodation from 21 January 2009 through 3 May 2009 and that she was discharged on 3 July 2009. (See, e.g. EEOC Charge, Pl.'s Dep., Def. Ex. 19, DE # 20-4; Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 14.) Because

6

these alleged adverse employment actions[2] occurred after the effective date of the ADAAA, there is no doubt that the ADAAA applies to this case.

C.      Failure to Accommodate Claim

Plaintiff alleges that she was discriminated against when Columbus refused her request for an accommodation, which she submitted to Columbus via letter dated 21 January 2009. (Pl.'s Dep., Def. Ex. 14, DE # 20-4.) Plaintiff asked that certain "adjustments" be made "to the physical demands of [her] position as a staff nurse" to allow her to return to work. (Id.) She specifically requested "that the requirement to stand be changed from constantly to frequently" and "that the requirement to stoop, kneel, crouch, or crawl be changed from frequently to occasionally." (Id.)[3]

To establish a *prima facie* case of discrimination under the ADA based on a failure to accommodate, a plaintiff must show (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Haneke v. Mid-Atlantic Capital Mgmt., 131 F. App'x 399, 400 (4th Cir. 2005); Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

---

[2] Under the ADA, the date of the alleged adverse employment decision is the relevant date for determining disability. See Pollard v. High's of Balt., Inc., 281 F.3d 462, 470 n.3 (4th Cir. 2002) (citing EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000)).

[3] The court notes that there is a dispute as to whether Columbus could have accommodated plaintiff by placing her in another job that she could have done with her physical limitations. (Compare G. Scott Aff., DE # 20-10, ¶¶ 7-8 (Scott told plaintiff there was no open position for her where she could perform the essential functions of the job given her restrictions) with Pl.'s Aff., DE # 22-1, ¶ 17 ("Ms. Scott specifically told me that there was an opening for a nurse in the emergency room, but she refused to let me transfer.").) It is also not clear whether plaintiff actually requested a job transfer as an accommodation. However, these issues do not create a genuine dispute of material fact due to the court's ultimate conclusion that plaintiff was not legally entitled to any accommodation under the ADA. See discussion, infra.

The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).[4] In her complaint, plaintiff asserted two alternate theories of recovery under the ADA. (Compl., DE # 1, ¶ 5.) She first alleged that she did not suffer from an actual disability but that she was regarded as disabled by Columbus. (Id. ¶¶ 5.a.– 5.d.) In the alternative, she alleged that she was in fact disabled at the times relevant to this action based on her inability to run or crawl. (Id. ¶ 5.e.)

However, plaintiff has subsequently admitted that she has never suffered from an actual disability and that, at most, she suffered from a transitory impairment in November and December of 2008 following her knee surgery. (See, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 10 ("the plaintiff has never asserted her actual impairment"); id. at 25 ("The issue has always been that [plaintiff] was regarded as being disabled."); Pl.'s Aff., DE # 22-1, ¶ 10 ("I never took the position that I was disabled . . . ."); Pl.'s Dep., DE # 20-2, at 120:10-11 ("I had a short-term disability after I had my knee cut in two and put back together."); id. at 176:14-16 (plaintiff was not disabled); Pl.'s Resp. to Def.'s First Set of Reqs. for Admis., DE # 20-12, Reqs. Nos. 8, 13 (plaintiff not disabled on 26 April 2009); id. Req. No. 14 (plaintiff not disabled on 3 July 2009). She has also maintained that she could have returned to work in late December 2008. (See, e.g., Pl.'s Aff., DE # 22-1, ¶ 7 ("I was able to return to work in late December, 2008 . . . ."); id. ¶ 9 ("There was little I could do . . . until I was capable of returning to work, which was in late December, 2008).) Because plaintiff alleges that she was not discriminated against

---

[4] The ADAAA left the ADA's three-category definition of "disability" intact.

until 2009 (see, e.g., EEOC charge, Pl.'s Dep., Def. Ex. 19, DE # 20-4), she has conclusively established by her own admissions that she was not suffering from an actual disability at the time the alleged discrimination took place and that she is proceeding solely on a theory of "regarded as"[5] liability pursuant to 42 U.S.C. § 12102(1)(C).[6]

As previously discussed in Section II.B., supra, the ADAAA applies to this case. Prior to the enactment of the ADAAA, there was a split among the circuits as to whether a plaintiff could prevail on a failure to accommodate claim if she could prove only that her employer regarded her as having a disability. Compare Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232-33 (9th Cir. 2003) (concluding that there is no duty to accommodate an individual who is regarded as having a disability); Weber v. Strippit, Inc., 186 F.3d 907, 916-17 (8th Cir. 1999) (same); Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999) (reaching same conclusion without analysis); and Newberry v. E. Tex. State Univ., 161 F.3d 276, 280 (5th Cir. 1998) (same) with D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1240 (11th Cir. 2005) (concluding that there is a duty to accommodate an individual who is regarded as having a disability); Kelly v. Metallics W., Inc., 410 F.3d 670, 675-76 (10th Cir. 2005) (same); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772-76 (3d Cir. 2004) (same); and Katz v. City

---

[5] An individual meets the requirement of being "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

[6] Several passages in plaintiff's response to Columbus's motion for summary judgment provide further support for the conclusion that plaintiff is proceeding solely on a theory of "regarded as" liability and that she has waived her alternate claim that she was actually disabled. (See, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 6 ("Has the defendant regarded the plaintiff as having a disability which would, if it existed, have substantially impaired one or more of her major life activities?"); id. at 12 ("It is the employer in the current matter who has refused to let the plaintiff return to work, alleging that she is disabled."); id. at 13 (Columbus "refused to let [plaintiff] return to work despite her assertion that she could do the job and was ready to work because it clearly perceived her as having a disability . . . .").)

9

Metal Co., Inc., 87 F.3d 26, 33 (1st Cir. 1996) (same). The Fourth Circuit Court of Appeals court had not taken a position on this issue. See Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 480 n.15 (4th Cir. 2010); Wilson v. Phx. Specialty Mfg. Co., Inc., 513 F.3d 378, 388 (4th Cir. 2008).

However, the ADAAA has now clarified that an individual who is "regarded as" disabled is not entitled to a reasonable accommodation. See 42 U.S.C. § 12201(h) ("A covered entity . . . need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."); Dennis v. Cnty. of Atl. Cnty., Civ. A. No. 09-6171 (NLH) (AMD), 2012 WL 1059420, at *5 (D.N.J. Mar. 28, 2012) ("[T]he 2008 amendments to the ADA exempt public employers from the requirement of providing accommodations for 'regarded as' disabilities."); Mercer v. Drohan Mgmt. Grp., Inc., No. 1:10CV1212, 2011 WL 5975234, at *7 (E.D. Va. Nov. 28, 2011) ("[T]he 2008 Amendments to the ADA formally adopt th[e] position" that an employer is not obligated to accommodate an employee who is merely regarded as disabled.); Fleck v. WILMAC Corp., Civ. A. No. 10-05562, 2011 WL 1899198, at *6 n.3 (E.D. Pa. May 19, 2011) ("Notably, the ADAAA . . . dictates that a plaintiff who is only perceived as disabled may not seek reasonable accommodation."); Blackburn v. Trs. of Guilford Tech. Cmty. Coll., 733 F. Supp. 2d 659, 665 n.4 (M.D.N.C. 2010) (noting that the ADAAA, although not retroactively applicable to the case, formally adopted the position that an employer is under no obligation to accommodate an employee who is simply regarded as disabled); Bateman v. Am. Airlines, Inc., 614 F. Supp. 2d 660, 672-73 (E.D. Va. 2009) (same). Plaintiff fails to address this controlling law in her brief and instead relies on pre-ADAAA case law to support her position that she was legally entitled

10

to an accommodation. Plaintiff's reliance on these authorities is misplaced, and the court finds that plaintiff was not entitled to a reasonable accommodation based on a perceived disability. Consequently, her failure to accommodate claim must be dismissed.[7]

D.      Wrongful Discharge Claim

Plaintiff also alleges that she was discriminated against when she was terminated from her position. Columbus informed plaintiff by letter dated 3 July 2009 that she was being removed from the payroll effective 3 May 2009 because she had qualified for long-term disability benefits. (T. Allen Aff., DE # 20-8, ¶ 11 & Ex. E.) Plaintiff does not argue that there is any direct evidence of discrimination in this case. (See, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 27-28 (acknowledging the application of the McDonnell Douglas framework to this action).)

When only indirect or circumstantial evidence is available, a plaintiff alleging a violation of the ADA must meet the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Wilson, 513 F.3d at 387; Rowe v. Marley Co., 233 F.3d 825, 829 (4th Cir. 2000); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. To establish a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must show: (1) that she was an individual who had a disability within the meaning of the statute; (2) that she was a qualified individual for the job in question; and (3) that she was discharged because of her disability. McFarland-Peebles v. Va. Dep't of Motor Vehicles, 352 F. App'x 848, 849 (4th Cir.

---

[7] Because the court concludes that the ADAAA bars plaintiff's failure to accommodate claim, the court does not consider Columbus's alternative arguments that plaintiff failed to file a timely charge of discrimination with the EEOC, that she failed to set forth a *prima facie* case of discrimination for failure to accommodate, and that her requested accommodations would have placed an undue hardship on Columbus.

11

2009); EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 (4th Cir. 1997).  If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  Should the defendant carry this burden, the plaintiff then must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  The ultimate burden of proving that "the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (citation and internal quotation marks omitted).

Assuming for the sake of argument that plaintiff could establish a *prima facie* case of discrimination within the McDonnell Douglas framework, Columbus has produced evidence of a legitimate, nondiscriminatory reason for plaintiff's termination.  At the time of plaintiff's discharge on 3 July 2009, Columbus had a published policy of removing from its payroll any employee on a medical leave of absence who became qualified to receive long-term disability benefits.  (T. Allen Aff., DE # 20-8, ¶ 10 & Ex. D; Pl.'s Dep., DE # 20-2, at 86-87; Pl.'s Dep., Def. Ex. 6 at 12, DE # 20-4.)  When plaintiff applied for – and then received – long-term disability benefits, she was removed from payroll pursuant to this neutral policy.  (T. Allen Aff. ¶¶ 10-11 & Ex. E.)  There was nothing unreasonable, unlawful, or discriminatory about Columbus's application of this neutral policy to plaintiff.  Cf. Kessell v. Mega Life & Health Ins. Co., No. Civ. A. 3:03-CV-2788-N, 2005 WL 383700, at *6 (N.D. Tex. Feb. 15, 2005) (employer's general policy of terminating employees after eighteen months of leave was a

12

neutral administrative policy that constituted a legitimate, nondiscriminatory reason for discharging plaintiff).[8]

Because Columbus has offered a legitimate, nondiscriminatory reason for plaintiff's termination, plaintiff must establish that Columbus's neutral application of its administrative policy was merely a pretext for intentional discrimination. See Reeves, 530 U.S. at 143; Perry v. Computer Scis. Corp., 429 F. App'x 218, 220 (4th Cir. 2011); Rowe, 233 F.3d at 829. In an attempt to establish pretext, plaintiff points to three Columbus employees "who have equally (or more) disabling conditions" than plaintiff but who were allowed to continue to work despite their limitations. (Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 28; see also Pl.'s Aff., DE # 22-1, ¶ 14.) It is true that a plaintiff can present circumstantial evidence of intentional discrimination by proving that similarly situated employees outside of the protected class received systematically better treatment. See Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010), cert. denied, 131 S. Ct. 1491 (2011); Pence v. Tenneco Auto. Operating Co., Inc., 169 F. App'x 808, 811 (4th Cir. 2006); Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2005). However, plaintiff has not established, or even alleged, that the three employees at issue were outside of plaintiff's protected class. The absence of any such evidence is fatal to any inference of pretext. If Columbus regarded these employees as disabled and nevertheless treated them differently than

---

[8] Plaintiff attempts to create a genuine dispute of material fact by arguing that "the whole application process [for long-term disability benefits] was insisted on by Tracie Allen on behalf of the defendant, but resisted by the plaintiff because it 'feels like fraud . . . .'" (Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 24; see also Pl.'s Dep., DE # 20-2, at 120:13-15 (in plaintiff's mind, she never had a disability, and that is why she "felt bad" about filling out the application for long-term disability benefits); Pl.'s Resp. to Def.'s First Set of Reqs. for Admis., DE # 20-12, Reqs. Nos. 8, 13.) Regardless of how plaintiff felt about the application, it is undisputed that she did in fact apply for long-term disability benefits, that the application was subsequently granted, and that she received benefits for a few months. Furthermore, any conceivable force that this argument might have had is countered by the fact that plaintiff has admitted in her own handwritten notes that she shared her misgivings about the long-term disability application with a Unum nurse named K. Fogg before Unum approved her request for benefits. (See Def.'s Reply Mot. Summ. J., Ex. L, DE # 23-3.)

13

plaintiff, "the difference in treatment would obviously not stem from a discriminatory animus towards the disabled." Young v. United Parcel Serv., Inc., Civ. A. No. DKC 08-2586, 2011 WL 3510997, at *3 (D. Md. Aug. 9, 2011) (emphasis in original); see also Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995) (finding plaintiff's "similarly situated" argument "inapposite" because "all employees to whom [the plaintiff] compares himself are also disabled" (emphasis in original)).

Although plaintiff's response to the motion for summary judgment is not a model of clarity, she also appears to be arguing that the decision to terminate her must have been discriminatory because she was in fact able to return to work in December 2008 following her knee replacement surgery. (See, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 3 ("[T]he plaintiff did not report to work on January 10, 2009, although she was capable of doing so."); id. at 13 (Columbus "refused to let [plaintiff] return to work despite her assertion that she could do the job and was ready to work . . . ."); Pl.'s Aff., DE # 22-1, ¶ 7 ("I was able to return to work in late December 2008 . . . .").) However, Columbus was not required to let plaintiff return to work merely because she insists that she was able to do so. See Young, 2011 WL 3510997, at *3.

Plaintiff also argues that Dr. Schuett testified in his 17 August 2011 deposition that the limitations he placed on plaintiff would not have kept her from doing her job. (See Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 18.) The court does not agree with plaintiff's characterization of Dr. Schuett's testimony, but even if it did, it is an undisputed fact that Dr. Schuett provided written documentation to Columbus in January 2009 which specifically stated that plaintiff was cleared for limited duty only and was subject to certain restrictions, including limitations on her

14

ability to walk and stand.[9] See Pollard v. High's of Balt., Inc., 281 F.3d 462, 470 n.3 (4th Cir. 2002) ("[T]here does not appear to be any authority in the case law interpreting the ADA to allow a medical practitioner's *nunc pro tunc* opinion to contradict his own contemporaneous opinion concerning a patient's disability in order to shore up a discrimination claim." (internal quotation marks omitted)). It is also undisputed that Dr. Schuett supported plaintiff's application for long-term disability benefits on 28 April 2009 by describing the limitations on plaintiff's abilities as a result of her surgery. (Pl.'s Dep., Def. Ex. 16, DE # 20-4, at CRHS 000117-18.) When Dr. Schuett was asked to describe plaintiff's restrictions, he wrote: "15 minute sit/elevate leg every 2 hours." (Id. at CRHS 000118.) He also indicated that plaintiff could only sit for four hours per day, intermittently, and stand or walk for two hours per day, intermittently. (Id.) Furthermore, Dr. Schuett was asked to provide his opinion on when he expected an improvement in plaintiff's capabilities, and he answered "undetermined" in response. (Id.)

The "regarded as" provision of the ADA was meant "to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001) (citation and internal quotation marks omitted). "Accordingly, [i]f a restriction is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." Kozisek v. Cnty. of Seward, Neb., 539 F.3d 930, 935 (8th Cir. 2008) (alteration in original) (citation and internal quotation marks

---

[9] Although plaintiff disputes that crawling and running were essential functions of her job (see, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 17-18, 21; Compl., DE # 1, ¶¶ 5.c., 7), she does not appear to contest that constant standing and walking were essential functions of her position as listed in her job description (see Pl.'s Dep., DE # 20-2, at 58; Pl.'s Dep., Def. Ex. 1, DE # 20-3, at CRHS 000007) or that Dr. Schuett placed restrictions on her in relation to those activities (see Pl.'s Initial Disclosures, Ex. E, DE # 20-6).

omitted); see also Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 86 (1st Cir. 2008) ("[Plaintiff] may not rely exclusively on her employer's recognition or implementation of the restrictions imposed by her own physician to establish a regarded as claim."); Young, 2011 WL 3510997, at *2 ("An employer is entitled to rely on a medical recommendation in making employment decisions."). Furthermore, "[t]here is no case supporting the notion that an employer must question a medical provider's judgment and independently divine whether an employee is truly able to work." Young, 2011 WL 3510997, at *3. As a result, the court finds plaintiff's arguments regarding the existence of pretext to be without merit.

It is apparent from plaintiff's pleadings that her wrongful discharge claim is really nothing more than a poorly disguised version of her failure to accommodate claim. (See, e.g., Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 26 ("The very discrimination which the defendant argues the plaintiff has not proven is proved by showing that the defendant failed to make a reasonable accommodation to an employee entitled to it."); Compl., DE # 1, ¶ 5.c ("[I]t was determined, by the defendant, that the plaintiff could not continue in her job and she was, even in the face of her request for a reasonable accommodation under the Americans With Disabilities Act, timely made, terminated from her employment as a operating room nurse, based on the said perceived disability, and for no other reason given to the plaintiff.").) Here, Columbus's recognition of plaintiff's physical limitations set forth by her own physician and its unwillingness to provide the accommodations that plaintiff sought, but to which she was not entitled, simply do not transform its actions into "regarded as" discrimination. See Ruiz Rivera, 521 F.3d at 86. Moreover, to allow plaintiff's wrongful discharge claim to proceed "would be tantamount to allowing her dismissed failure to accommodate claim in through the back door."

16

Id. The record in this case is devoid of evidence that the decision to terminate plaintiff was motivated by an animus towards the disabled. Therefore, plaintiff's wrongful discharge claim must be dismissed.[10]

### III. CONCLUSION

The court has considered all of the parties' arguments, the record of this matter, and the relevant legal precedent, and has concluded that there is no genuine issue of material fact to be resolved. Accordingly, Columbus's motion for summary judgment (DE # 19) is GRANTED. The Clerk is directed to enter judgment in favor of Columbus and close the case.

This 12 April 2012.

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　　　　　　　　　　Senior U.S. District Judge

---

[10] The court emphasizes that it has considered all of the arguments that plaintiff has made in an attempt to create a genuine dispute of material fact and has found them to be unconvincing. For example, in her response to Columbus's motion for summary judgment, plaintiff appears to argue that she was actually fired because she exhausted her FMLA leave on 9 January 2009 and then requested an accommodation on 21 January 2009. (See Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 26-28.) The court finds absolutely no support for this claim in the record. Even if the court were to accept plaintiff's argument that there was "obvious confusion about the date she was to return to work and her request for accommodation" (id. at 28), plaintiff was not discharged at the time of the "confusion" in January 2009 but was terminated approximately six months later, on 3 July 2009. Plaintiff acknowledges the 3 July 2009 termination date in her response to the motion for summary judgment. (Id. at 4, 14; see also EEOC charge, Pl.'s Dep., Def. Ex. 19, DE # 20-4.) Thus, it is clear to the court that there is no causal connection between plaintiff's termination and the exhaustion of her FMLA leave or her request for an accommodation. The court also notes that even if plaintiff had received the full twelve weeks of FMLA leave that she thought she was going to receive (see Pl.'s Resp. Def.'s Mot. Summ. J., DE # 22, at 2-3; Pl.'s Aff., DE # 22-1, ¶ 5) and had tried to return to work at the end of those twelve weeks on 28 January 2009, she would still have been subject to the restrictions that had been recommended by Dr. Schuett on 22 January 2009 (see Pl.'s Initial Disclosures, Ex. E, DE # 20-6).

　　　　By way of another example, plaintiff argues that Columbus terminated her in order to save money. (See Pl.'s Dep., DE # 20-2, at 176-79; Pl.'s Aff., DE # 22-1, ¶ 8.) This evidence does not support plaintiff's claim that she was terminated because she was perceived to be disabled.